Case No. 25-219, True to Vote Name v. Incremental Revenue Service at a Botloff RTC Event. Mr. Bob, are you there? Mr. Lockhart, may I start you out, please? Good morning, Mr. Bob. You may proceed when you're ready. Thank you, Your Honor. May it please the Court? I'm James Lockhart, Jr., Attorney for the Botloff. This is a relatively, in my opinion, straightforward case regarding the validity of an attorney's lien under Indiana law. Botloff firm's lien is valid because, one, the client, True to Vote, and the former attorneys failed to even contest the validity of the lien, even though given numerous opportunities to do so, and, in fact, expressly conceded this. Second, the court below erroneously considered this issue, though it was never raised. Third, Indiana law is clear that there is an equitable lien in a fund received by the client through the efforts of the attorney. And finally, the record reveals that the funds here were secured by the efforts of the Botloff firm. So, first, True to Vote and... Can I ask a special question? Of course. If you're right, all right, that there was an error of law, and the case goes back to the district court, then what is your position? On what, Your Honor? My position on... You're seeking attorney's fees, right? Yes. You want to be paid? Yes. And that's why you want a lien? Yes. So, what do you do with the lien? What do you... What happens? Oh, I'm sorry, Your Honor. There's a fund that the... Is there a fight over priority? Yes.  And there's... Is there a fight over the client agreement? Client's grievance? The client's agreement. Oh.  No, not that I know of. The client has turned over any right the client has. They have assigned those to us. That are what I'm calling the equal access to justice fund.  That is the fund. And yes, priority is an issue to be resolved by the court. So, suppose the district court rules that the former attorney's lien has priority over yours. Then what? They would be fully paid whatever amount the court finds they are owed. Suppose, hypothetically, because I don't know the amount of that lien. Suppose it's the whole $700,000. It's over $600,000 they're claiming. The fund has almost $800,000. So, there would be a residual which we would be entitled to either because our lien is secondary or because of the assignment. So, I don't think there's any contest of we would be entitled to the remainder. I'm just trying to think of how this court's opinion can bring this matter to a close. And that's why I'm trying to understand what your position is. Because I found the brief not helpful. All right? I understand you think there's an error of law. All right? And I thought, then what happens? So, you are saying, and I think you say this in your brief, that you agree the former attorney's lien comes first. I do not agree that they come first. That's what I thought. All right. So, here's my hypothetical. There's $700,000 in the equal access to justice fund. The prior attorney paid $700,000. Then what? If the fund is exhausted, then we receive nothing. The fund won't be exhausted because the issues you're referring to were pending before the court for decision. I.e., the priority, who has priority, and how much the lien was to be valued at. Those were both pending. The judge had asked us to brief those questions specifically. He did not ask us to brief the validity of the lien. It was never briefed, and in fact, conceded repeatedly. Well, they conceded it insofar as the BOP law firm claimed $150,000 and change. But they did not ever concede that the lien allowed you to claim hourly rates under the truth vote agreement beyond that. It's just not fair in the record, which I've read, to say that they conceded that the attorney lien would entitle you to the full amount of what you claim under your retainer. I didn't say that. What I said was that there's two elements to what you're saying, and these were conflated throughout the litigation. One element is, did we have a valid lien? The second issue was, how much is that lien? How do you value it? And then, of course, the subsidiary question is, who has priority, all right? So they don't, as I understand it, and they can speak for themselves, the former attorneys don't, as you say, they don't dispute that there was a valid lien, but they understand there to be a valid lien for the amount that the BOP law firm submitted for each of these, the $150,000 odd. So they're not disputing that. Even now, they're not disputing that. They're not claiming more than what they submitted that yielded the $638,500. So I think the parties agree there was a valid lien, at least up to DLS claimed each amount. But those two are separate issues. No, I understand. I understand. You did a very clear job of explaining that in the sense that, one, is there a valid lien, and then, two, what does that get you? And you say that secures the full amount of your retainer at your hourly rate, not at the $150 an hour rate. I understand that that's your position.  We're arguing over the amount. But if the basis for the lien is that it results from that the attorney's effort secures the fund, your position, I take it, is that your effort secured the fund because you were the signatory on each of the petitions? Is that right? It's a little more difficult than just signing your name, Your Honor, to get an award under the Equal Access to Justice Act. So your position about whether the BOP law firm's efforts secured the fund, that's what I'm asking. What is your position on that? Exactly. It was the efforts of the BOP law firm. Can you explain that? Of course. It starts with the consent decree. All the efforts by the former attorneys created no benefit to the client, no ruling by any court that provided them substantive relief. The only one they won was in the Court of Appeals on a mootness question. Was the case moot? And the D.C. Circuit said, no, it's not moot. And so it went back. When we got into the case, in other words, all their efforts were futile. It accomplished nothing. You see, that's what I'm trying to understand about how you want us to look at this case. All right? Because you are making that type of argument, which means we go back to square one. And that's what your brief said to me. Because you think you're entitled to more than $150,000, even though that's the cap under the B.A.J.A. statute. So there'll be an argument about that. There'll be an argument about priority. There'll be an argument about attorney fees. All right? And what else is there going to be an argument about? That's what I know about. Because your argument, I thought, was not the response you just gave to Judge Piller. But I thought you had agreed that that fund should be apportioned. Oh, that was a compromise in mediation. And we mentioned that in the footnote that that would net about $400,000 each party. And we offered that as a compromise in mediation. But what is being contested is whether we are entitled to the $505,000 we have demonstrated through our billing that were the hours we spent and then at the hourly rate agreed to. All right? And where they want that to be valued not based upon the agreement, but based upon how equal access to Justice Act funds are determined. That's apples and oranges big time. Okay? That's back to square one. Okay, that's what I'm trying to get at. Yeah, that'll be an issue. There are some issues that the district court has decided. And when I read the district court's opinion, I read the district court to say, one, there was no, he certainly cited the Coons case and the two factors. All right? He said, one, there was no agreement. And then he has some other language that's saying, nor. All right? So you read that as he's still on the agreement. Yes. But he says, you have to look to the client for anything in excess of what you're seeking. Well, if he's right. But what I'm saying, so then I read, well, you went to the client and the client turned over a sign to you, any funds the client might be entitled to from the EAJA money. So when I read that, I thought, where is the case of controversy in this case? All right? EJA has a cap. They're offering you the cap. They're willing to take whatever is left. And so you get your money under the EJA cap and they get their money. But then when I read your brief, I understood, no, you really want to go back to square one on some of these issues. So the compromise that they're offering now is we're not even going to fight anymore about your entitlement to the 150. But you're saying you're owed much more. Yeah. Because our lien is based upon the agreement. The Equal Access... That's why the district court said, look to the client. And so you went to the client, you got the assignment. But we get a lien under Indiana law for funds that have been secured by the client by our efforts. And to finish the answer to Judge Pillard's question, it began with getting a consent decree that we negotiated with the IRS that gave our client 100% of what our client wanted, plus the explicit permission, if you will, by the government that we can pursue attorney's  We then pursue attorney's fees under the Equal Access Justice Act. And we are able to convince the court two very difficult things. First, that the IRS's position was not substantially justified. That gives us the statutory rate of $140 to be computed on what is... To have it compute the fund that is created. And then we can convince the court, which is mind-bogglingly rare, that the government's position was in bad faith, which gives us market rates. And all of this is simply how do you compute the funds that are owed as reasonable attorney's fees under the ELJ? And then there's a fund. Now, you're arguing now that your efforts secured the EAJA award. 100%. And you're arguing that that is enough because, unlike what the district court held, you read Indiana law to require one or the other ground, not both. I don't see... So, is that right? Yes. I don't see how you can read twos when they say it's one or the other. And so you... Explicitly. You don't need to, and you're not relying on the notion that you had any mutual agreement with True the Vote that your fees would be paid out of the EAJA award. That's correct. You don't need to rely on that. That's not what you're relying on. And that's not what we're relying upon. We're relying upon the agreement that establishes the attorney-client relationship and allowed us to do all this very beneficial work for the... And how much. And you're not relying... You're not contesting that abuse of discretion is the standard for review. Yes. I'm not contesting that. To what extent is... You make an argument that it's insurance authority. Is that different in your mind from equitable authority or it's more or less the same? It's broader. It's broader. But what is critical is what is the law on equitable liens? The law in Indiana is without question that either you have an agreement with the client that you're going to be paid out of the fund or there's no agreement and you have a fund that was created by your efforts. So... Either one. Right. The lower court conflated those and said you needed an agreement, which is D.C. law, not Indiana law. So if there's a remand, the judge exercises his equitable discretion, is it your position that... It's clearly your position that it need not attract the allocation under EJ. In other words, one way to look at the extent to which the award was a result of the attorney's effort is to say, well, that's very similar to the EJ inquiry itself, that some of the effort... Now, I know you don't agree with that, but if the district court did think that, why would that be an abuse of discretion? Because it's wrong as a matter of law, and those are de novo. I mean, there's a mixture here, all right? Some of these considerations, like what's the law and how equitable liens arise, that's a question of law under Indiana law. And the Indiana Supreme Court in the Coons case has clearly established that. I'm not following. If the question for the district court is whether the award was the result of the efforts, was secured by the efforts of an attorney, one or more attorneys, and let's say the district court thought, well, this award was secured by the effort of all of the attorneys involved, you think that right there, that's an abuse of discretion? No, I think that would be an exercise of the equitable powers of the court, but in applying the correct law. However, the correct law is that you don't have to be the exclusive generator of the fund, okay? And, of course, I think it's quite clear in the facts of this case that we were the exclusive generator of the fund. We won the case. So let's say, I've heard you say that and I understand that that's your position, but I'm exploring your reaction to positions that aren't your ideal advocated positions. And they haven't. Let's say a district judge says that I think that there was, you know, much of the house built and then maybe you put the roof on it, nobody could live in it until you did that, but the house was also built by the contributions of others and exercised equitable discretion under the Indiana standard of attorney effort that secured the award. What is your argument that if the district court said, I'm just going to look to EJA to determine which portion of the award was secured by which of the lawyers, your reaction to that, if that comes up again or in arguing to the district court, is that would be an abuse of discretion. Why? I would argue that it's abuse of discretion.  Well, because of the computations under the Equal Access to Justice Act is completely inapplicable because the lien is governed by the retainer agreement, not the Equal Access to Justice Act. And it specifies in the agreement how the hourly rates that are going to be applied to the work that we do. In the attorney agreements relevance, we're not talking about the mutual understanding that the retainer would be compensated out of the EJA award. We're talking about whether the Bob Law Firm's efforts secured the award. You don't need an agreement for that, do you? Well, you have to be an attorney to the client. And under my ethical rules in Indiana, you've got to have an agreement. Awful fast. And let's say the agreement said, well, we'll represent you and we'll expect to be paid. Yeah, when we specify. What about Indiana law under this prong that talks about whether the attorney's effort secures the award renders all of the lawyers whose efforts secured the award? Why would one lawyer get the hourly rate that they put in their contract and other lawyers not? Because once you check the box that you have a lien under you secured the funds, and you don't have to be the exclusive one to secure the funds, that you secured the funds. Then the valuing, the lien, is based on the retainer agreement. How many hours did you spend? What was the hourly rate? That's why. Under Equal Access to Justice Act, you have to show not substantially justified or bad faith here. And then you have a rate, $140 is the standard rate. You get market rates. And then in this case, the court cabined the abuse of the bad faith to only a portion of what the lawyers did. And that's the reason mine was valued at $140. Mary's were valued at market rates. What's your Indiana law, I assume it would be Indiana law, for the notion that the value that you get from a lien that rests on the effort of the attorney, the value of that lien is determined by the retainer. What's your best site for that? I don't know a site for that. That's never been raised. So I haven't had the occasion to hunt for one. So that's why the district court looked to what the intermediate Indiana courts had done. And basically they said, we have to look at these problems together. The intermediate. And I know you disagree with that. And Reed Coons, and there are two alternatives. But to respond to Judge Pillard's question, which I thought the district court was trying to figure out, well, what do I do? So he looks to the intermediate court of appeals to figure out and looks not only to the Indiana courts, but courts around the country and says, this is how I have to look at this. All right. And I know you disagree with that. But trying to figure out what you're seeking, other than the $505,000 that you say, as I understand it, you're entitled to, and I'm not questioning that under your agreement, but I'm just saying that's my understanding, what you think you're entitled to. Let's just make that a hypothetical. If you don't get that, that's because you think the district court has abused its discretion by virtue of an error of law. Well, the error of law is conflating the two circumstances and requiring an agreement no matter what. And that's clearly not the law in Indiana. That would be de noble, I would think. Well, you heard Judge Pillard's question. She's trying to get some understanding of what your position is. And my understanding that that's what the district court was trying to understand too. And maybe he made an error of law, but I thought, what do you do? Basically, the way I read this was that the former attorneys have said, look, we've been struggling over this for, what, seven years. Let's end this. You get $150,000. We get our fee, right? You say no. You're the creator of the fund. It's only your efforts that created that fund. So we're back to square one, because that is not the way I read the district court's understanding of what happened in this case. Well, let me address. All we're trying to figure out is, what can we say based on the issues that are before us that tries to clarify some of this? And maybe we can't. And this goes on for another seven years. But that really is. And not questioning any representation you make as to what you're owed. But this could go on forever, if everything has to go back to square one in terms of who actually made an effort to get the government to enter this consent agreement and all of that, long before you came into the case. That's all I'm getting at. There's no dispute that we got this settlement, the consent decree. The former lawyers were gone, okay? Replaced by us. Several months later, we were able to negotiate and get 100% of what the client wanted. And then we were the ones that pursued the fund. But I wonder. I don't know if that's undisputed. Imagine I'm trying to open a can, push it off, and I can't get it. I can't get it in the hand of somebody else. And then I go, pop, cut right off. I say, well, I loosened it for you. I mean. They haven't argued that they were negotiating some consent decree. And, in fact, I know that's not the case. That's what I'm representing. Even if that's not the case, isn't it conceivable that it was easier for you to get the consent decree because they had loosened the jar? There's nothing, no objective evidence that any jar was loosened by them. Everything that they tried failed except for reversing mootness. Significant. I agree. But that's it. No decisions, no concessions, no anything that benefited the client. We were at square one when I got in the case. Did they have beneficial work and did the court err in including their Lodestar calculation in the EGFB award? Their part of the calculation on their fees was at market rates. I understand that.  Not. The IRS was acting in bad faith. Yes. And the way those hours are valued is not at the statutory one. I understand that. I'm sorry. My question for you was there was an award of fees, a calculation of fees, and the bulk of the fee that was awarded was based on hours contributed and some of which were valued more highly, as you just said, because of IRS bad faith. But hours contributed by your firm, by the Foley firm, by the Center for Constitutional Jurisprudence, and by the Public Interest Law Foundation. Your position to us today is that nobody but your firm actually secured the award. And my question is, if they didn't contribute to the success of the litigation, is it error for the district court to have counted any of their work in the size of the pot? It was not error to count their work.  Because the way equal access to justice calculations go with respect to is, in this case, it was from the very beginning. Now, occasionally you have instances where a motion is filed, okay, and somebody says, well, that's not substantially justified. Or in bad faith, then you get the award of savings that related to that. This one was from the very beginning to the very end. Contributed to the result in the case. Well, it depends on what you think of as results, okay? It is true that you calculate the fund based upon the attorney's fees, the attorney time, either times 140 or market, to calculate the fund. That is true. That's what that does. But a lien by an attorney is calculated based if there is an agreement and it specifies hourly rates, it's based upon the time and hourly rates in the agreement. So these are just apples and oranges that don't have anything to do with each other. And so now, by the way, the Court of Appeals, Judge Rogers, the Court of Appeals case is Hamilton. Yes, one of them. Hamilton, in Hamilton, the validity of the lien was conceded. It wasn't litigated. The Court of Appeals didn't say, oh, the law is all this. That's what it is. Questioning that. Okay, what they said. What I'm trying to say is that to answer the question that Judge Pillard put to you, a couple of questions back, I thought the district court was trying to figure out, how do I answer this? And so he looked to these intermediate Court of Appeals decisions to try to figure out how the Indiana courts had looked at this and, indeed, how the Second Circuit, how the D.C. Court of Appeals, and the Ninth Circuit. I mean, that's all I thought he was doing. I'm not arguing the facts of the intermediate appellate court cases with him. Well, I'm not arguing the facts. I'm just arguing that what they said was we need give no time to a discussion of the validity or character of the claim of the lien because the appellate admitted that the appellee's attorneys has a lien on the judgment from which the appeal is taken. So Hamilton was completely meaningless to the question. We're two trains passing in the night, okay? I'm not disputing what those cases are about. I'm trying to understand how the district court tried to answer the question that Judge Pillard raised. All right? That's all. The court never tried to answer the question, was there a fund received by the client that was a result of the efforts of the attorney? He never sought to decide that question. His only consideration was, was there an agreement? Well, that's wrong under Indiana law. So do you dispute that, and I know you dispute the premise, but accept my premise for purposes of the question. If the former attorney's lien had priority, and you don't agree with that, but if it did, assignment from, through the vote, to you of its EAJA award would be subject to that lien. True. Okay. So just, I think you've satisfied me, you've answered my questions. On remand, just to recap, what do you think the district court still needs to decide? Well, if we prevailed here, you would have a one sentence which says that Bop Law Firm had a valid lien, and you'd remand for further consideration. Further consideration would involve things that were pending at the time the court issues its memorandum opinion. I'll let you decide that in light of some of the issues that Judge Pillard's question raised. All you have argued to us, as I understand it, is that there was an error of law because the district court only looked to one of the factors that the Coon case mentioned, and the district court needed to look to the second, alternative, independent factor. So if we agree with you, we would just send that back. Yeah, and they would do that. And the only thing I've been trying to figure out about this case is, is there any way to bring it to a close? And apparently the answer is no. No, no, and I'm not happy about that. I mean, everything that was needed to finish the case was before the court. We had done supplemental briefing. And out of clear blue sky, something that the court has said in its order, former attorneys do not appear to challenge the validity of Boff Law Firm's charging lien, but instead insist that their charging lien has priority over the Boff Law Firm charging lien. That's on page 11. That's the district court's opinion about what happened here. And so out of clear blue sky, an issue that was never raised actually conceded, never briefed, instead of deciding the priority to be amassed. If this were remanded, what would the district court need to decide? What issues would be remaining? And you said we would issue one sentence, you know, remand, and then what would the district court, what would be left for the district court to do? What would your argument to the district? You would be saying to the district court, we want some money because, and what comes after the because? The priority of which lien, the former attorney's lien or our lien, which comes first. And then how much are we entitled to under that lien? Those are the two issues. And the former attorney's lien, at least chronologically, came first. Which? At least chronologically came first. The former attorney's lien in 2013. Yes, but there was a subsequent one that the court ruled was superseded and voided the first one. So the district court would have to figure out which of the former attorney's two possible liens controls and then figure out which, whether that one has priority to your lien. And then once that decision is made, we'd have to figure out the proper allocation of the money. Okay. It's a totally separate, largely separate question. I, this is more than a hundred years old. Their best case is more than a hundred years old. This, we are not the Indiana Supreme Court. I know the district court asks those parties whether this should be certified and no one wanted to. But have you had any occasion to reconsider that? I don't think it's accurate to say we didn't want that to happen because that would have been fine with us. However, Indiana rules provide that the question that you're asking the court to decide has to complete the litigation.  All right. Not be some intermediate step in the litigation. And this is, we're involved in the intermediate step right now. As you just had me explain to you. I think that might be right. And that might be what Indiana's rules mean by dispositive. Yes. You know, if we were to affirm based on the district court's understanding of Indiana law, that would complete this case. If you win. No, no, if you lose. No, that's my point. Yeah, no, I, you know what? That's a really, I hadn't thought of that angle. And that's very. You haven't persuaded Judge Walker's staff. Well, that's fine. He hasn't. But. Going back to who actually established the fund. But that, Judge Walker, that's really a good, good argument that I hadn't considered. There's one way of this being resolved that would complete the litigation on the lien. And that would be to affirm. So, I'd be perfectly happy if you could certify. Can you certify to Indiana and find out whether it's viable? I'd be very happy for that to happen. And I have been ordered in litigation before to request that of state Supreme Court. And I'm familiar with the process. And I'd be all in for that. Well, not every state has that same rule. Sure. As us. Sure. But you're saying no. Indiana is a little unruly. Well, the way I interpreted this positive, what I was thinking about winning the appeal. Let's hear from the former attorneys. Of course. Thank you, Mr. Barton. Thank you. May it please the Court. Michael J. Lockerbie with the law firm of Foley & Lardner and also present until a minute ago at council table. It's Kalen Phillips from the Public Interest Legal Foundation, to which I'll refer as PILF. Before addressing the issues I had planned to address, Judge Rogers raised an issue that I hadn't contemplated. But really it's a threshold issue that I do believe needs to be addressed first. And that's case or controversy and whether there is a case or controversy. And as I have thought about it the last 28 minutes or so, it occurred to me that there really isn't with respect to two issues. One is the issue whether the BOP law firm, BLF, has a lien under its agreement with the client through the vote. And it doesn't because the BOP law firm saw two bites at the apple here. It filed suit in federal court in Indiana first to recover the same $505,000 that it now says is the subject of its, that later said was the subject of its charging lien in the district court here in Washington. And I'm not going to do a dramatic reading of truth of those pleading, but we certainly quoted in our brief. And there's some pretty harsh words about the scope and nature of the representation. And rather than see that case through, the BOP law firm dismissed those claims with prejudice. And so it really is res judicata that there is no claim. What's your best precedent for the proposition that the dismissal, the voluntary dismissal with prejudice has res judicata effect? Standing here today, I don't have one, Your Honor, was not planning to make that argument. But if it's a dismissal with prejudice, it almost seems self-evident because once the claim has been dismissed with prejudice, it can't be reasserted either in that court or anywhere else. The other issue about which there's no case or controversy is that the former attorney's charging lien exists and it has priority. And that was a finding by the district court that BLF did not appeal. Did the district court find that your lien had priority? It did. Where? I thought it was sort of a conditional sentence. That priority remains to be decided based on the priority of your lien. I thought priority is still an open issue. If I've misspoken, I apologize. I can certainly look for that. I will look for that in a minute. I believe that to be the case. But let's see if I can find it now, actually. Is it in your view in the district court's opinion or was it previously in the hearing? In the hearing, let's see. Let's see. Certainly, the finding at ECF number 245 was the former attorneys have a valid charging lien. I don't know that there's an express holding that has its priority, although it arose under a prior agreement and it also arose under the equal. What do you think about certifying this question about Indiana law to the Indiana Supreme Court? I don't understand what issue needs to be resolved by the Indiana Supreme Court because whether the test is either or or both, either that the BOP law firm secured the award or that it was required to or that it was entitled to the funds under the fee agreement, it can't recover either way. I thought that if it's either or, then they have a valid lien. That would then raise the question about the relationship between its lien and your lien. I thought that you had agreed that in that situation that the BOP law firm would get some money. If that's more than what they're getting now, which is no money. Which is nothing. Well, that's correct, but the source of that lien would... I didn't think that just because he invalidated their lien, does that mean they get no money? Well, we're not arguing that. I think a case can be made that they don't get it directly from the court, but the result would be the same. There's $150,000 excess, and so that $150,000 would be payable to true the vote. And under the assignment agreement that the BOP law firm apparently has with true the vote, true the vote would be required to pay that $150,000 over to the BOP law firm. And we're not suggesting that. And if they didn't, that would be a new case. Let's hope not. Something wouldn't be a new case? Well, a new piece of litigation, if that's what your honor was referring to. But that ought to be... The assignment appears to be fairly simple and straightforward. And so that if true the vote received $150,000, which it can receive without reversal... You're pretty confident they're just going to write that check? I can't speak to that, but certainly... And I don't want to speculate whether they would or wouldn't, but my point is, if we just say affirmed, I think, I forget the case number of this case, but I think whatever the case number for this district court case is, that is closed. And for the purposes of the BOP law firm, they have nothing left to do. They have nothing they can gain from that district court case, this district court case. And then if they don't get the check for $150,000, I guess they could sue in what would be a new case, with a new case number. It would be, and that's a simple collection case. Because of their assignment from... Because of the assignment by true the vote. But with respect to what happened in this court, in the lower court, the findings... Of course, the district court found that of the $788,539.30, only $150,000 and some change was attributable to BLF. And the district court made those findings based on filings that the BLF itself submitted. And that's how the district court came up with these numbers. $348,979 to filth. $264,686.57 to foley. Before I knew of the assignment, okay, in terms of the chronology of this case, I thought the judge was just applying the Equal Access to Justice feeling. I'm sorry, you thought the judge was... Applying the cap in the Equal Access to Justice Act. Although... No, you're saying no. Well, no, the judge in calculating fees as part of the EAGA award did apply a cap. But also applied the information about who did what when to come up with those numbers. And the record is clear that virtually all of the substantive work was done by the former attorneys dating back to 2013 through February 2017 when BLF entered its appearance. And we laid out in our brief why that's the case. ECF number one, factual development, preparing and filing the complaint, but responding to the motion to dismiss. That's ECF number 65 and 72. Obtaining reversal in this court of the district court's dismissal of the government defendants, which was key. That's a reported decision from 10 years ago, 2016. Responding to the government's summary judgment motion, number 119. A successful motion for discovery under Rule 5016, that's ECF 138. You're telling me that the way I should read the record is that the district court, and this is all clear from the record, asked the parties to make submissions. All right? He asked for three things. And one of them was the billing records. So the parties submitted that. And you're saying that it was on the basis of that information that the judge said, well, Bob Lawfirm is entitled to $150,000. That's correct, Your Honor. And it was based on that. And while those submissions to the court were signed by the Bob Lawfirm, and there's also an issue, and it's not briefed, of judicial estoppel, frankly. They won on that motion. And now they're seeking a do-over years after the fact. And the record showing that the former attorneys contributed quite a bit to the work that was the subject of the EAGA award is not only established in the declaration of Katelyn Phillips, this ECF number 180, 180-8 in paragraph 4. Even in this court, the Bob Lawfirm's brief, and this is on page 5, talks about extended discussions, review, input, and work of the former attorneys that went into the fee award. So the bottom line is the district court did not err by not allowing BLF to abuse the equitable remedy of a charging lien to take fees that had been earned by others for work done by others. And again, this was the award under the EAGA. It had nothing to do with the agreement. Moving forward on that argument, assuming that is a correct way to look at the record, then even if, as the Bob Lawfirm argued, the district court erred as a matter of law by not going to the second ground under the Coons decision, it was harmless error because there's no prejudice in the sense that the district court made a finding of the amount to which the Bob Lawfirm was entitled based on the filings that were presented to the district court. That's correct, Your Honor. And if the Bob Lawfirm wanted more, which obviously it did and does, if it wanted more than the district court was willing to award, then it had a remedy. And that remedy was under its fee agreement, but I'm using the past tense, had, because it doesn't have that remedy anymore. It filed that claim and dismissed that claim with prejudice. So the result of the with prejudice dismissal would be to the claim preclusion against any claim based on the retainer agreement or any claim for fees whatsoever? Based on the retainer agreement. And so to the extent that the Bob Lawfirm's position before us is, A, the district court was wrong, that you have to have both factors. One factor is enough. B, the factor we're relying on is that our efforts secured the award. And C, we're entitled to at least the full amount we would be entitled to under our retainer agreement. It's only that third part that would be precluded.  And so in your view, they would still be entitled to argue that they're, well, I guess there's two ways they would get to the same result. One, that if they have a lien that does or does not, I guess, have priority over yours, to the extent that their efforts secured the award, they'd be entitled. They'd still be entitled to that on an equitable basis without the retainer. Under the Equal Access to Justice Act. And that amount is $150,000. Right. Or if they've settled their entire claim to fees, you're not arguing that, but if they had it to settle their entire claim to fees, they nonetheless would get the residuum because nobody else is claiming it? If they hadn't settled their claim, they could seek more than $150,000. But they haven't. But they've settled that claim. But you started by saying there's no case or controversy. But now I hear you saying there's a theory under which they can still seek fees. It's just bereft of their effort to inject their retainer into their, the size of the claim. Their effort to inject the retainer, but also it's an unnecessary step because they already have an agreement from the litigation in Indiana that says that any amount awarded under the Equal Access to Justice Act is theirs. And truly the vote has to pay it over to them. And so really what they're seeking to do is, although they appealed the district court's order on the charging lien, that doesn't really solve their problem. Because even if they have a charging lien, they would still have to go back and have a do-over of the entire EHEA fee award. And if, let's say, they had a valid charging lien, it couldn't have attached before they entered an appearance in February 2017. And so basically they would be seeking to go back before the date of that alleged lien and take hundreds of thousands of dollars for work done by the former attorneys. And you're not doing what the Bob Law Firm is doing and saying, well, yeah, we were undercompensated both because even the bad faith amount doesn't match our hourly rate. And even more so, the EGES standard amount of $150 falls far short of our hourly rate. You're not saying, and therefore if our lien has priority, we want all of it. And you're not doing that because you were under a, you were representing them pro bono on the understanding that if there was fee shifting, you would get paid. Well, it was pro bono representation, but we submitted. That's what I'm saying. You would get paid. But if there were to be a do-over, there were a lot of fees that Foley and PILF, I can't speak for CJC, submitted that were disallowed. And so if we really wanted to go back to square one and re-litigate that, then there certainly are issues that we could have raised, would raise, but aren't raised. I guess I'm not entirely following the do-over, the numbers going into the EGES award. I mean, I was pressing Mr. Bob on his notion that the award, his efforts secured the award because the EGES award itself suggests that multiple attorneys' efforts secured it. But when you're talking about, I know this was an exchange that you were having with Judge Rutsch. I'm just not sure that I see anybody asking to resubmit the EGES application. No, we're not seeking that. But why are you talking about it? Well, the reason I'm talking about it. Well, the EGES award itself suggests that the funds was secured by the efforts of many different lawyers. It says that, but then it also apportions that. Yes. And it's based on the work that the district court found each law firm had performed. Right. And then there's certain aspects of that work that the former attorneys were compensated for at a higher rate, not necessarily what their standard rate would be, but certainly of a higher rate. And there's work that went to securing that award for which the former attorneys received no compensation, including coming up with these numbers and the justification for the award in the first place. So there was billing judgment, and then the district court ultimately reviewed and snipped and addressed it. Yes, and that happened to everybody. It wasn't just the Bob Law Firm. No, that's typical. But so that we're all on the same page. But when you're suggesting that someone is suggesting going back and redoing that, and maybe it did flow from the question I asked, but do you take Mr. Bob to be suggesting that? Do you take that to be a sequelae of some line of argument that were discussed? Well, if the district – I think the point is that even if the Bob Law Firm has a valid charging lien or had a valid charging lien, how would that change the outcome? Because the Bob Law Firm's work, for one thing, was all done after the work of the former attorneys it issued. So clearly, the former attorneys charging lien would have priority. That's one point. The other is that basically if the case were remanded to the district court and the district court were instructed to go back to the drawing board and recalculate what it previously awarded under EAGA, it seems to me that's starting from scratch. That is a do-over. And in your view, if we were to hold that the district court had misapplied the Indiana lien law to require both prongs, and really only one is required, A, does there need to be a remand, and B, what does the district court need to find and hold on remand, decide? I would also say that it was – the Bob Law Firm never argued the first prong, the prong that it secured the result here until this appeal. That's not an argument that was made in the district court. That's nowhere to be found in all the briefs and the hearing transcripts or anywhere else. But it is fair to say that it was arguing that it was entitled to a lien under Indiana law. He was – I agree with your point about it didn't go into details, but that was the general argument. That was the argument, yes. And so the district court, in its opinion, lays out the two prongs. All right? And I was trying – this is an experienced district court judge. I thought the district court judge is clearly aware of the two prongs and that they're independent. I mean, he can read. And so why doesn't he deal with both of them? And I thought, well, he was trying to figure out what does he do if he decides that the fund was created by the Bob Firm separate. And that's why I thought he was looking to these other cases. But I may be wrong about all of that. But in any event, the issues – he asked for the briefing on all these issues. So he had everything before him when he ruled. And I thought, then what happens if we say there's an error of law because he didn't make an express finding about the second alternative? And I thought, well, what happens? And that's why my first question, argument open to Mr. Bob, was what's next if you win on that error of law argument? And the second argument that you're talking about is that the Bob Law Firm secured the award. But how could the district court have erred by making a finding for which there was no submission in the first place? There's no submission by the Bob Law Firm in the record that its efforts solely secured those funds. I understand there's been rhetoric today about how the Bob Law Firm turned things around. And the client didn't agree. But in any event, the issue that was briefed extensively and also argued this morning was that the Bob Law Firm shouldn't have been held to the EHEA hourly rate. And that it should get a higher rate under its fee agreement. That it raised a claim for and then dismissed the claim with prejudice. So in answer to my question, whether we would have to remand, what's your answer? I don't believe that the court has to remand or should remand. I mean, I'm assuming that we disagree with the district court's reading that you need both factors. If we so held. That it would be harmless error. Which would be harmless error? That the district court's finding that Indiana law requires both factors would be harmless error. And that's because the Bob Law Firm has forfeited the argument that it secured the funds? That and also, and of course, the reversal and remand would also require a finding that the Bob Law Firm had a valid charging lien. Or maybe would after remand. But even if the Bob Law Firm had a valid charging lien, its charging lien couldn't start before it entered into Paris. And it can't go back and try to simply take money away from the former attorneys on the theory that it should have gotten more than what the statute says it should get. I mean, that's really an issue for Congress. If litigants and their lawyers don't like the hourly rate, index it to inflation or to match the market in D.C., it would have to be raised 10 times for better or worse. I may be not recalling sufficiently. Was this extensively briefed, this harmless error argument in this appeal? No, I don't believe so. We simply pointed out that the Bob Law Firm hadn't raised the – we, of course, were seeking affirmance. But we simply pointed out that the Bob Law Firm hadn't argued in the district court that its efforts secured the award. But moreover, the record didn't support that. And I think you might be right about all that. But without more briefing, I think I would probably have more confidence in the district court deciding that question before we decided without any briefing or with hardly any briefing. I would say that the Bob Law Firm had an opportunity to brief that before. How many bites – Even the forfeiture argument that you're making seems like it's probably best resolved in the first instance by the district court. Why didn't the Bob Law Firm make the argument before? The Bob Law Firm filed two motions, an original motion. And why didn't they make the argument that they did not forfeit? The argument – or why did they not make the argument that you think was forfeited? Why did they not make the argument that they're now hanging their hat on? That is – what you just said is perhaps a very persuasive forfeiture argument. But usually persuasive arguments get made in briefing before courts decide them. Well, the two motions that the Bob Law Firm filed were its opportunity to speak now or forever hold its peace. And now, years after the fact, it's come up with a different argument that it wishes it had been made before. So did the district court – I hear all that. I'm not saying that I think you're wrong. I'm just – I'll drop it. I'll just comment. I'll let you respond to my comment, and then I'll get out of the way here. But everything you just said seems like something you should tell the district court in your efforts to persuade them that the Bob Law Firm has forfeited a claim. And if you succeed, good, and if you – for you, and if you don't succeed, good for them. But it seems like it would be a bit odd for us to just decide it now. Well, except if the alleged error were harmless error, there'd be no reason to brief it. And, you know, we couldn't respond to an argument that wasn't made. We weren't going to, you know, respond to a motion for charging lien and say, well, their arguments are wrong. But there's another argument that they could have made. I'm not saying you forfeited your forfeiture argument. I'm just saying you haven't briefed your forfeiture argument. So that forfeiture argument shouldn't be decided until you've briefed it probably before the district court. Well, except they didn't. They didn't raise the argument before. There's also the point that the district court held a hearing on this whole matter.  And previously they issued an order saying I want the parties to submit three things. All right, then he held a hearing, and everybody had a chance to speak and say whatever they wanted to. And the district court said, anybody got anything else to say? And the district court said, okay, I'm going to take this under advice. And he didn't say those exact words. But, I mean, he issued his order later or his memorandum opinion later after the hearing. Unlikely memorandum opinion. And your Honor's characterization of what the district court said is certainly faithful to the transcript. And my synopsis was speak now or forever hold your peace. But there was plenty of opportunity for the Bob Law Firm to make this argument factually and legally. And for whatever reason, it did not. So you just referred a few times to a harmless error. And I'm not sure exactly what you're referring to. What was the error that was harmless? I was referring, I believe the phrase was actually in Judge Rogers' question. I was going to say, don't blame the attorney. Myself. Why isn't this harmless? But it's not a blame. I think it's a fair characterization. The district court erred in thinking both strands of the lien law in Indiana were required. And if that's error, we haven't decided that obviously. But assuming that that were error, it's harmless because? Because there was no evidence or argument presented to the district court that Indiana law required both prongs. And that the Bob Law Firm satisfied both prongs. Well, so we're clear. But I don't want to deceive Judge Pillard here. But you go on and then I'll clarify. You said there was no argument or evidence that Indiana law required both, but then the district court so held. And the strand that the Bob Law Firm was relying on before, I think, was that they had an understanding with True the Vote that they would be paid out of the EJA award. No? They had a retainer and then? They had an understanding with True the Vote that was reflected in the fee agreement. They had to pay their early rates and they had a lien, they're saying. Yes. And the source of the lien could only be one of two things. It could either be the fee agreement or whatever they contribute to the EJA award. The fee agreement is gone as the source of the lien at this point. So it's simply what they contributed to the fee award. And your position, so one way of looking at it is timeless error, but the other way is forfeiture. That they have never argued that until this court that their efforts destroyed the award. Yes. And they made that argument after dismissing their claims in Indiana. They made that argument to us? Yes. After dismissing their claims in Indiana. All right. Thank you. Thank you. Did Mr. Bach reserve any time for questions? You have your three minutes. Thank you. Just a couple of points. First, the counsel argued and derived all sorts of meaning from the dismissal of the lawsuit in Indiana between the Bob Law Firm and True the Vote. That dismissal was based upon a confidential settlement. And he's reading into that settlement all sorts of things that I can't talk about. All right. And the dismissal was part of the execution of the settlement as explained in the dismissal pleading. The only other thing we know is that True the Vote assigned all of their interest in this fund to us. Now, why do we derive from that? Is that a negative inference should be drawn from that? Well, of course not. They're giving up any right they have to any of that to us. Do you have any case law on whether – I think the way one measures claim preclusion is by what was raised in the complaint, and that any of those claims that are resolved with prejudice are thereby precluded. So we don't need to know the terms of the settlement agreement. We know that the case was dismissed with prejudice, and we know what the case was about. And so anything that relates to that same case is done. We can't relitigate that. I think that's the argument, preclusion, and I think there's support for that. Do you have anything to the contrary that you want to draw our attention to? The case law that says a voluntary dismissal with prejudice lacks claim preclusive effect? Well, if it's based upon a settlement, logically it's the terms of the settlement that would govern that action of the court in granting the dismissal. But no, I don't have any cases because this is the first time this issue has ever arisen. So, you know, I think it's perfectly obvious from what I can talk about and what has happened is there's no negative inference to be drawn from the settlement and dismissal. Well, it's not a negative inference. It's just that that's over and can't be relitigated. That's all. It's not being relitigated. Right. So great. We agree. No, it's being collected as a result of a lien. That is different. And, I mean, that's my argument based upon something I haven't researched. I thought that for race judicata purposes, that is often a case that is dismissed with prejudices on the merits, but it will sometimes be the case that it's not on the merits. For example, if it was a statute of limitations reason in federal court, it might then be litigated in state court. Of course, or a settlement. And you might be wrong about the race judicata. They may be entirely right about race judicata, but it again seems like something that's not. That's true. And here's a critical element is the settlement and the settlements confidential. All right. Do you want to just wrap up? Yes, I would want to wrap up by saying that as the court found in the opinion you are reviewing, former attorneys never, ever, ever contested the validity of the lien. Now, we did assert it, the lien, and the justification for the lien in our notice of attorneys charging lien, which began all this. We enjoyed appendix 16 through 19, where we said, quote, that the brought up law firm has a substantial interest in any recovery, end of quote. And then we, as a result of the briefing order by the court that resulted in that hearing that resulted in the opinion that we are being reviewed, in our supplemental brief, we said, My law firm seeks to have the fees and costs due then for services in the suit secured out of the judgment or recovery in the suit. So we absolutely argued that an equitable lien in the fund, we were arguing an equitable lien in the fund in both of those instances. Why didn't we go farther? It was never contested. All right. Thank you.
judges: Pillard; Walker; Rogers